**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **INEZLEE FELICIANO and AMANDA CARDONA,** on behalf of themselves and all others similarly situated, <br><br> **Plaintiffs,** <br><br> -against- <br><br> **JPJ FRANKLIN LLC, PENN BURGERS, LLC, and SUNRISE BURGERS, LLC,** <br><br> **Defendants.** | **No. 25 Civ. 1929** <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiffs Inezlee Feliciano and Amanda Cardona ("Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge, and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      JPJ Franklin LLC, Penn Burgers, LLC, and Sunrise Burgers, LLC ("Defendants") own and operate franchised Checkers restaurants in New York City.  Defendants failed to pay and schedule their employees, including Plaintiffs, properly in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the New York Labor Law ("NYLL") Article 6, §§ 190, *et seq.*, and the supporting New York State Department of Labor Regulations; and New York City Fair Workweek Law, Title 20, Chapter 12 of the New York City Administrative Code ("Fair Workweek Law").

2.      Plaintiff Feliciano brings the First Cause of Action on behalf of the following collective of similarly situated individuals, referred to as the "FLSA Collective":

> All hourly employees who were employed by any Defendant at a Checkers located in New York State from three years prior to the filing of the complaint through the date of final judgment.

3.      Defendants violated the FLSA by failing to pay Plaintiff Feliciano and the FLSA Collective minimum wages and overtime wages on their scheduled payday.  Defendants paid the FLSA Collective every other week, despite purporting to issue weekly paychecks to Plaintiff Feliciano and the FLSA Collective.   Defendants withheld every other weekly paycheck for an extra week.  They, as a result, only provided paychecks to Plaintiff Feliciano and the FLSA Collective on a bi-weekly basis and not on their scheduled paydays.

4.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), Plaintiffs bring the Second Causes of Action on behalf of the following class of similarly situated individuals, referred to as the "NYLL Class":

> All hourly employees who were employed by any Defendant at a Checkers located in New York State six years from the filing of the original complaint through the date of final disposition.

5.      Defendants violated the NYLL because they failed to timely pay Plaintiffs and the NYLL Class.  The NYLL requires employers to pay manual workers, like Defendants' hourly workers, within seven calendar days after the end of the workweek in which wages were earned. N.Y. Lab. Law §§ 191.  Defendants paid Plaintiffs and the NYLL Class on a bi-weekly basis. Defendants, however, feigned compliance with the NYLL by cutting checks each week but only remitting those paychecks to the NYLL Class every other week – extending the time between the end of the first workweek and the pay day by over seven days.

6.      Pursuant to Rule 23, Plaintiff Feliciano brings the Third, Forth, and Fifth Causes of Action on behalf of the following class of similarly situated individuals, referred to the "Fair Workweek Class":

> All hourly employees who were employed by any Defendant at a Checkers located in New York City at any time from two years from the filing of the original complaint through the date of final disposition.

7.    Defendants violated the Fair Workweek Law by failing to provide Plaintiff Feliciano and the Fair Workweek Class their schedule at least 14 days in advance, altering schedules at the last minute without obtaining written consent and without paying premiums, and failing to provide pathways to full-time employment.

## THE PARTIES

*Plaintiff Feliciano*

8.    Plaintiff Inezlee Feliciano is an adult individual and resident of Kings County, New York.

9.    Plaintiff Feliciano worked for Defendants as a cashier from approximately February 2023 through July 2023.

10.    At all times relevant, Plaintiff Feliciano was "employ[ed]" within the meaning of 29 U.S.C. § 203.

11.    At all times relevant, Plaintiff Feliciano was an "employee" within the meaning of the N.Y. Lab. Law §§ 190(2), 651(5).

12.    Plaintiff Feliciano was entitled to payment of her wages within seven calendar days after the end of the workweek, as per NYLL § 191(1)(a).

13.    At all times relevant, Plaintiff Feliciano was a "manual worker" within the meaning of the NYLL.

14.    At all times relevant, Plaintiff Feliciano was an "employee" within the meaning of N.Y.C. Admin. Code §§ 20-1201.

15.    At all times relevant, Plaintiff Feliciano was a "fast food employee" within the meaning of N.Y.C. Admin. Code §§ 20-1201.

16.    Plaintiff Feliciano was a non-exempt, hourly-paid employee of Defendants.

17.     At all relevant times, Plaintiff Feliciano worked under the direction and control of Defendants.

18.     Defendants prepared Plaintiff Feliciano's checks on a weekly basis but only provided the paychecks to Plaintiff Feliciano on a bi-weekly basis.  As a result, Defendants failed to pay Plaintiff Feliciano on her payday every week and within seven days after the close of the workweek.

19.     Defendants' manager regularly texted Plaintiff Feliciano her schedule less than 14 days before the first day of her schedule.

20.     Defendants did not post the schedules on the wall.

21.     Defendants regularly instructed that Plaintiff Feliciano come in more than 15 minutes before she was scheduled to work.

22.     Plaintiff Feliciano was also asked to and did work after her scheduled shift because the store was busy or short staffed.

23.     Defendants did not get Plaintiff Feliciano's written consent when requiring her to work additional hours.

24.     Defendants did not pay Plaintiff Feliciano any sort of premium pay for unscheduled working hours or changes in her schedule.

25.     Defendants failed to give Plaintiff Feliciano the opportunity to work more shifts before hiring new employees.

26.     Plaintiff Feliciano worked for Defendants at their Checkers location at 43 Empire Blvd, Brooklyn, NY 11225.

***Plaintiff Cardona***

27.     Plaintiff Amanda Cardona is an adult individual and resident of Kings County, New York.

28.    Plaintiff Cardona worked for Defendants as a cashier from approximately January 2021 through April 2021.

29.    At all times relevant, Plaintiff Cardona was an "employee" within the meaning of the N.Y. Lab. Law §§ 190(2), 651(5).

30.    Plaintiff Cardona was entitled to payment of her wages within seven calendar days after the end of the workweek, as per NYLL § 191(1)(a).

31.    At all times relevant, Plaintiff Cardona was a "manual worker" within the meaning of the NYLL.

32.    Plaintiff Cardona was employed by Defendants, primarily as a cook.  To these ends, Plaintiff Cardona's duties consisted of cooking food, preparing food, cleaning the kitchen area and other parts of the restaurant, and serving food and beverages to customers.

33.    Plaintiff Cardona was a non-exempt, hourly-paid employee of Defendants.

34.    At all relevant times, Plaintiff Cardona worked under the direction and control of Defendants.

35.    Defendants prepared Plaintiff Cardona's checks on a weekly basis but only provided the paychecks to Plaintiff Cardona on a bi-weekly basis.  As a result, Defendants failed to pay Plaintiff Cardona on her payday every week and within seven days after the close of the workweek.

36.    Plaintiff Cardona worked for Defendants at their Checkers location at 797 Pennsylvania Avenue, Brooklyn, New York 11207.

***Defendant JPJ Franklin LLC***

37.    JPJ Franklin LLC is a New York corporation.

38.     JPJ Franklin LLC is headquartered in Brooklyn, New York and does business in New York.

39.     JPJ Franklin LLC owns and operates fast-food restaurants known as Checkers located at 43 Empire Boulevard, Brooklyn, New York 11225.

40.     At all relevant times, JPJ Franklin LLC was and is an "employer" within the meaning of NYLL § 190(3).

41.     At all relevant times, JPJ Franklin LLC was an "employer" within the meaning of N.Y.C. Admin. Code § 20-1201.

42.     At all relevant times, JPJ Franklin LLC was a "fast food employer" within the meaning of N.Y.C. Admin. Code § 20-1201.

43.     At all relevant times, JPJ Franklin LLC was an "employer" within the meaning of 29 U.S.C. § 203.

44.     JPJ Franklin LLC was the entity on Plaintiffs' paystubs.

*Defendant Penn Burgers, LLC*

45.     Penn Burgers, LLC is a New York corporation.

46.     Penn Burgers, LLC is headquartered in Brooklyn, New York and does business in New York.

47.     Penn Burgers, LLC owns and operates fast-food restaurants known as Checkers located at 797 Pennsylvania Avenue, Brooklyn, New York 11207.

48.     At all relevant times, Penn Burgers, LLC was and is an "employer" within the meaning of NYLL § 190(3).

49.     At all relevant times, Penn Burgers, LLC was an "employer" within the meaning of N.Y.C. Admin. Code § 20-1201.

50.    At all relevant times, Penn Burgers, LLC was a "fast food employer" within the meaning of N.Y.C. Admin. Code § 20-1201.

51.    At all relevant times, Penn Burgers, LLC was an "employer" within the meaning of 29 U.S.C. § 203.

***Defendant Sunrise Burgers, LLC***

52.    Sunrise Burgers, LLC is a New York corporation.

53.    Sunrise Burgers, LLC is headquartered in Brooklyn, New York and does business in New York.

54.    Sunrise Burgers, LLC owns and operates fast-food restaurants known as Checkers located at 139-33 245th Street, Rosedale Village, New York 11422.

55.    At all relevant times, Sunrise Burgers, LLC was and is an "employer" within the meaning of NYLL § 190(3).

56.    At all relevant times, Sunrise Burgers, LLC was an "employer" within the meaning of N.Y.C. Admin. Code § 20-1201.

57.    At all relevant times, Sunrise Burgers, LLC was a "fast food employer" within the meaning of N.Y.C. Admin. Code § 20-1201.

58.    At all relevant times, Sunrise Burgers, LLC was an "employer" within the meaning of 29 U.S.C. § 203.

***Defendants***

59.    Defendants share common ownership.

60.    Paramjit Josan ("Josan") is a member of each Defendant.

61.    Josan is the owner of each Defendant.

62.    Josan holds himself out to the media as the owner of Defendants.

63.    Josan is held out as the owner of each Defendant in the Franchisee Disclosure documents of Checkers Drive-In Restaurants, Inc., the franchisor of Checkers.

64.    Upon information and belief, Josan is the CEO of each Defendant.

65.    Upon information and belief, Josan is an agent of each Defendant.

66.    Defendants share employees.  That is, Defendants' employees may be transferred between restaurants.

67.    Defendants share common management.

68.    Defendants currently share or have shared a common operations manager who was hired by Josan.

69.    Josan makes it a point to spend time in the stores every day, making sure the stores are running smoothly, and that rules and procedures are being followed.

70.    Josan was quoted as saying the following in an online article published on March 3, 2017:  "I love to go to all my stores each day, spending two or three hours in each one, but that's not always possible . . . . Sometimes I can only get to two or three. I look at everything, from the curb, all the way to the back of the kitchen. It's very important to focus on daily operations, ensuring that quality of the food and customer relations are always up to standards."

71.    Josan holds out his brother, and business partner, Manjit Singh ("Singh"), as owner and agent of Defendants.

72.    Josan and Singh are reported as having "gone in on" their first Checker's franchised store in about 2008, and Josan is quoted as saying the following in an online article published on March 3, 2017:  "[O]nce we got involved with [Checkers], we got very good support from the franchisor, which is what you need, especially at the beginning. And that's why Checkers is different from other franchises. You get great support from the franchisor in every way

possible." The article further noted that "Support started right away for the brothers. They both went down to Tampa for a month of training, which they agree was invaluable"

73.     At all relevant times, Defendants maintained control, oversight and direction over Class Members, including Plaintiffs. Defendants' control included timekeeping, payroll and other employment practices that applied to them.

74.     Defendants are joint employers.

75.     Defendants are a single integrated enterprise.

## JURISDICTION AND VENUE

76.     This Court has federal question jurisdiction over Plaintiff Feliciano's FLSA claims, which arise under 29 U.S.C. § 216(b), pursuant to 28 U.S.C. § 1331.

77.     This Court has supplemental jurisdiction over Plaintiffs' NYLL and Fair Workweek Law claims pursuant to 28 U.S.C. § 1367.

78.     Venue is proper in this judicial district because the facts and events giving rise to Plaintiffs' claims occurred in this judicial district. 28 U.S.C. § 1391.

## FLSA COLLECTIVE ACTION ALLEGATIONS

79.     Plaintiff Feliciano brings this action on behalf of herself and all other similarly situated hourly employees. *See* 29 U.S.C. § 216(b).

80.     Defendants are aware or should have been aware that the FLSA regulations require employers "to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21(b).

81.     The FLSA has long required that employees be paid on their regular payday. *See, e.g.*, *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960) ("[T]he failure of the corporate defendant to pay promptly the statutory overtime compensation was a violation of 29 U.S.C. § 207(a)."); *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55 (2d Cir. 1998).

82.    Defendants issued weekly checks with weekly paydays but only provided the checks to Plaintiff Feliciano and the FLSA Collective on a bi-weekly basis – after their regular payday had already occurred.

83.    Defendants failed to pay Plaintiff Feliciano and the FLSA Collective on their regular paydays.

84.    Plaintiff Feliciano is similarly situated to Defendants' other hourly employees because Defendants delayed payments to Plaintiff Feliciano and the FLSA Collective.

85.    There are numerous similarly situated current and former hourly employees who worked at Checkers in New York who would benefit from the Court authorizing issuance of notice of this lawsuit so that these employees may opt-in to this lawsuit.

86.    Similarly situated tipped employees are known to Defendants and are identifiable in Defendants' payroll records.

## NYLL CLASS ALLEGATIONS

87.    Pursuant to Rule 23(b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and other current and former employees.

88.    The proposed NYLL Class is so numerous that joinder of all members is impracticable.  During the relevant period, Defendants have employed over 40 employees in New York.

89.    The claims of Plaintiffs are typical of the members of the proposed NYLL Class: Defendants failed to timely compensate Plaintiffs and the NYLL Class.

90.    Each class member's claim is controlled by the NYLL and one set of facts. Pursuant to Fed. R. Civ. P. 23(b)(3), questions of law and fact are common to the class and predominate over any individual questions.  Such common questions of law and fact include, but

are not limited to, whether the NYLL Class is similarly situated because they all were subject to Defendants' common policy and practice of violating the NYLL.

91.    Plaintiffs and the NYLL Class were uniformly deprived of the time value of their earned wages during periods in which payment was illegally delayed.  Plaintiffs and the NYLL Class Members lost the opportunity to grow such untimely-paid wages through investment. Plaintiffs and the NYLL Class Members also lost the opportunity to use their earned wages which Defendants wrongfully withheld.

92.    Defendants, however, benefited from the delayed payments.  That is, among other things, Defendants reduced their administrative costs by paying less frequently than required and used the extra money Defendants were holding onto as it pleased (or, alternatively, did not use the money and earned interest on the unpaid wages) until payroll was cut.

93.    Defendants do not possess a good faith basis for deciding to pay and thereafter continuing to pay their employees' wages bi-weekly.

94.    The State of New York has required employers to pay certain manual workers on a weekly basis since the 19th Century.  See N.Y. Session Law 1890, Ch. 388 § 1; N.Y. Session Law 1897, Ch. 415 §§ 2, 10. 39.   The FLSA, is "a corollary" to this mandate under Section 191 of the NYLL.  *Gorski v. State*, 23 Misc. 3d 327, 874 N.Y.S.2d 347, 352 (Ct. Cl. 2008).  The FLSA has also long required that employees be paid on time.  *See, e.g.*, *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960).

95.    A reasonable employer inquiring into New York's wage payment rules would know that manual workers are to be paid each week given that, for example, the rules have been listed on the Department of Labor's Frequently Asked Questions flyer regarding the Wage Theft Prevention Act and many legal, human resource, and employment blogs brought attention to this

issue following the First Department's 2019 decision in *Vega v. CM & Assocs. Constr. Mgmt. LLC*, 175 A.D.3d 1144 (1st Dep't 2019).

96.     Manual workers have been held to include restaurant and other food-service workers.  *See, e.g.*, *Beh v. Cmty. Care Companions Inc.*, No. 19 Civ. 1417, 2021 WL 3914297, at *3 (W.D.N.Y. Feb. 1, 2021) ("[C]ooks, wait staff, . . . and pizzeria workers have been found to be 'manual workers.'" (collecting authorities)), *adopted*, 2021 WL 3914320 (W.D.N.Y. June 23, 2021); *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 482 (S.D.N.Y. 2012) (noting that food-service workers are manual laborers).

97.     Upon information and belief, Defendants do not qualify for the exemption from the NYLL's weekly payment requirement because they do not employ over 1,000 employees in the state of New York.

98.     Upon information and belief, Defendants did not apply for the exemption.

99.     The New York State Department of Labor has not authorized Defendants to pay its employees on a bi-weekly basis.

100.     Upon information and belief, Defendants did not: (a) inquire into whether its bi-weekly payroll practice complies with the NYLL; (b) take requisite steps to ensure that Plaintiffs and NYLL Class Members were paid as per the timely pay requirements of the NYLL; and (c) conduct any study or audit of its compensation practices to ensure that Plaintiffs and the NYLL Class Members were paid in compliance with the NYLL's timely payment requirements.

101.     Pursuant to Fed. R. Civ. P. 23(b)(1)(A), a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources and incentives to prosecute separate lawsuits against their employer.  The damages suffered by the individual class

members are small compared to the expense and burden of individual prosecutions of this litigation.  Prosecuting dozens of identical, individual lawsuits would not promote judicial efficiency or equity, nor necessarily give consistent results.  Class certification will eliminate the need for duplicate litigation.

102.    Pursuant to Fed. R. Civ. P. 23(b)(2), Defendants have acted, or has refused to act, on grounds generally applicable to the NYLL Class, thereby making appropriate final injunctive relief, or corresponding declaratory relief, with respect to the class as a whole.

103.    Plaintiffs will fully and adequately protect the interests of the Class.  Plaintiffs seek the same recovery as the Class, predicated upon the same violations of law and the same damage theory.  Plaintiffs' Counsel is qualified and experienced in the prosecution of wage and hour class actions.  Neither Plaintiffs nor their Counsel have interests that are contrary to, or conflicting with, the interests of the Class.

## FAIR WORKWEEK CLASS ALLEGATIONS

104.    Pursuant to Rule 23(b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Feliciano brings this action on behalf of herself and other current and former employees.

105.    The proposed Fair Workweek Class is so numerous that joinder of all members is impracticable.  During the relevant period, Defendants have employed over 40 employees in New York.

106.    The claims of Plaintiff Feliciano are typical of the members of the proposed Fair Workweek Class because Plaintiff Feliciano brings the same claims as the Fair Workweek Class.

107.    Each class member's claim is controlled by the Fair Workweek Law and one set of facts.  Questions of law and fact are common to the class and predominate over any individual questions.  Such common questions of law and fact include, but are not limited to:

    a.   Whether Defendants failed to provide Plaintiff Feliciano and the Fair Workweek Class with at least 14 days' notice of their schedule;

    b.   Whether Defendants required Plaintiff Feliciano and the Fair Workweek Class to work additional hours beyond what they were scheduled to work;

    c.   Whether Defendants failed to obtain a written consent from Plaintiff Feliciano and the Fair Workweek Class when requiring them to work these additional hours;

    d.   Whether Defendants failed to pay Plaintiff Feliciano and the Fair Workweek Class any sort of premium pay for unscheduled working hours or changes in their schedule;

    e.   Whether Defendants failed to give then-employed part-time employees the opportunity to work more shifts before hiring new employees.

108.    Plaintiff Feliciano and the Fair Workweek Class were uniformly deprived of the predictable schedules, owed premiums, and pathways to full-time employment.

109.    Pursuant to Fed. R. Civ. P. 23(b)(1)(A), a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources and incentives to prosecute separate lawsuits against their employer.  The damages suffered by the individual class members are small compared to the expense and burden of individual prosecutions of this litigation.  Prosecuting dozens of identical, individual lawsuits would not promote judicial efficiency or equity, nor necessarily give consistent results.  Class certification will eliminate the need for duplicate litigation.

110.    Pursuant to Fed. R. Civ. P. 23(b)(2), Defendants have acted, or have refused to act, on grounds generally applicable to the Fair Workweek Class, thereby making appropriate final injunctive relief, or corresponding declaratory relief, with respect to the class as a whole.

111.    Plaintiff Feliciano will fully and adequately protect the interests of the Class. Plaintiff Feliciano seeks the same recovery as the Class, predicated upon the same violations of law and the same damage theory.  Plaintiff Feliciano's Counsel is qualified and experienced in the prosecution of wage and hour class actions.  Neither Plaintiff Feliciano nor her Counsel have interests that are contrary to, or conflicting with, the interests of the Class.

**FIRST CAUSE OF ACTION**
**FLSA – Failure to Pay Timely Wages**
**(Brought on behalf of Plaintiff Feliciano and the FLSA Collective)**

112.    Plaintiff Feliciano incorporates by reference all preceding allegations.

113.    Plaintiff Feliciano and the FLSA Collective members are employees entitled to be paid overtime wages as soon as practicable after the workweek ends.  *See* 29 C.F.R. § 778.207.

114.    Plaintiff Feliciano and the FLSA Collective members are employees entitled to on-time payment of their statutory minimum wages after the workweek ends.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).

115.    Defendants employed Plaintiff Feliciano and the FLSA Collective members for workweeks in which Plaintiff Feliciano and the FLSA Collective members worked over 40 hours, entitling them to overtime wages under the FLSA.

116.    Defendants, however, every other week withheld Plaintiff Feliciano's and the FLSA Collective members' federally mandated wages for one week after the conclusion of the workweek and the established payday.

117.    This delay was pursuant to a companywide policy and practice to pay Defendants' employees on a bi-weekly basis even though it issued paychecks on a weekly basis, misleadingly backdating the checks from the earlier workweek.

118.    Such a delay is inherently unreasonable, as Defendants were required to pay Plaintiff Feliciano and the FLSA Collective members on their regular payday.

119.    Defendants failed to make a good faith effort to comply with the FLSA with respect to compensating Plaintiff Feliciano and the FLSA Collective members.

120.    Defendants have the means to pay Plaintiff Feliciano and the FLSA Collective members within their regular payday but chose not to.

121.    Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

122.    As a consequence of the willfully delay of wages, alleged above, Plaintiff Feliciano and the FLSA Collective members incurred damages and seek to recover interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

123.    Plaintiff Feliciano brings this Cause of Action as a collective action under Section 216(b) of the FLSA.

**SECOND CAUSE OF ACTION**
**NYLL – Failure to Provide Timely Wage Payments**
**(Brought on behalf of the Plaintiffs and the NYLL Class)**

124.    Plaintiffs incorporate by reference all preceding allegations.

125.    The timely payment of wages provision as set forth in NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiffs and the NYLL Class.

126.    Defendants failed to pay Plaintiffs and the NYLL Class on a timely basis as required by NYLL § 191(1)(a), which resulted in Plaintiffs and the NYLL Class being underpaid.

127.    Due to Defendants' violations of the NYLL, Plaintiffs and the NYLL Class are entitled to recover from Defendants the amount of the underpayments caused by its untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

### THIRD CAUSE OF ACTION
### Fair Workweek Law - Failure to Provide Advance Notice of Work Schedules
### (Brought on behalf of Plaintiff Feliciano and the Fair Workweek Class)

128.    Plaintiff Feliciano incorporates by reference all preceding allegations.

129.    Defendants are required to provide employees with written notice of their work schedules at least 14 days before the first day of each schedule. N.Y.C. Admin. Code § 20-1221(b).

130.    Defendants are also required to maintain records of each written schedule provided to each employee. N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. § 7-609(a)(1)(iii). A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable presumption that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

131.    Defendants committed a violation of Section 20-1221(b) of the Fair Workweek Law each week it failed to provide each employee with that employee's written work schedule 14 days in advance.

132.    As a result of Defendants' violations of Section 20-1221(b) of the Fair Workweek Law, Plaintiff Feliciano and the Fair Workweek Class have been deprived of a predictable schedule and are entitled to: (1) an order directing compliance; (2) unpaid schedule change premiums, ranging from $10 to $75 for each violation; (3) compensatory damages and any other relief required to make the employee whole; and (4) reasonable attorney's fees.

### FOURTH CAUSE OF ACTION
**Fair Workweek Law - Failure to Provide Schedule Change Premiums**
**(Brought on behalf of Plaintiff Feliciano and the Fair Workweek Class)**

133.    Plaintiff Feliciano incorporates by reference all preceding allegations.

134.    Defendants are required to provide employees with premium pay for changes it makes to employees' work schedules any time after the 14-day statutory schedule provision date. N.Y.C. Admin. Code § 20-1222(a).

135.    Defendants are required to maintain records that show each written work schedule provided to each employee, each employee's actual hours worked, and the amounts of premium pay provided to employees whose work schedules are changed by Defendants with less than 14 days' notice.  N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. §§ 7-609(a)(1) and 609(a)(2)(ii).  A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable presumption that such fact is true.  N.Y.C. Admin. Code § 20-1206(b).

136.    Defendants committed a unique violation of Section 20-1222(a) of the Fair Workweek Law each time it failed to pay required schedule change premiums to fast food employees whose work schedules it changed with less than 14 days' notice.

137.    As a result of Defendants' violations of Section 20-1222(a) of the Fair Workweek Law, Plaintiff Feliciano and the Fair Workweek Class have been deprived of a predictable schedule and are entitled to: (1) an order directing compliance; (2) unpaid schedule change premiums, ranging from $10 to $75 for each violation; (3) compensatory damages and any other relief required to make the employee whole; and (4) reasonable attorney's fees.

### FIFTH CAUSE OF ACTION
**Fair Workweek Law - Failure to Offer Newly Available Shifts to Existing Employees**
**(Brought on behalf of Plaintiff Feliciano and the Fair Workweek Class)**

138.    Plaintiff Feliciano incorporates by reference all preceding allegations.

139.    Defendants are required to notify its current employees about newly available shifts and offer them those shifts before hiring any new employees.  N.Y.C. Admin. Code § 20-1241.

140.    Defendants are required to maintain records that document their compliance with the Fair Workweek Law for three years.  N.Y.C. Admin. Code § 20-1206(a).  A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable presumption that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

141.    Defendants committed a unique violation of Section 20-1241 of the Fair Workweek Law each time they failed to offer a current employee the shifts it subsequently offered to a new hire in the same Defendants' location.

142.    As a result of Defendants' violations of Section 20-1241 of the Fair Workweek Law, Plaintiff Feliciano and the Fair Workweek Class are entitled to: (1) an order directing compliance; (2) compensatory damages and any other relief required to make the employee whole; and (3) reasonable attorney's fees.

<u>**PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL**</u>

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief:

A.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, and Fair Workweek Law;

B.    An award of damages, according to proof, including liquidated damages;

C.    Unpaid schedule change premiums;

D.    Compensatory damages and any other relief required to make the employees whole;

E.    Certification of this case as a class action pursuant to Rule 23;

F.      Authorization to send notice to the FLSA Collective of this action and grant them the opportunity to join pursuant to Section 216(b) of the FLSA;

G.      Designation of Plaintiffs as Class Representatives, and counsel of record as Class Counsel;

H.      Appropriate equitable and injunctive relief to remedy Defendants' violation of NYLL and the Fair Workweek Law, including but not limited to an order enjoining Checkers from continuing its unlawful practices;

I.      Penalties, as provided by law;

J.      A reasonable service award for each of the Plaintiffs for the time they spent attempting to recover wages for Class Members and for the risks they took in doing so;

K.      Attorneys' fees and costs of action incurred herein, including expert fees;

L.      Pre-judgment and post-judgment interest, as provided by law; and

M.      Such other legal and equitable relief as this Court deems necessary, just, and proper.

Dated: April 8, 2025
       Melville, New York                          Respectfully submitted,

                                                   Garrett Kaske

                                                   Troy L. Kessler
                                                   Garrett Kaske
                                                   **KESSLER MATURA P.C.**
                                                   534 Broadhollow Road, Suite 275
                                                   Melville, NY 11747
                                                   Phone: (631) 499-9100
                                                   tkessler@kesslermatura.com
                                                   gkaske@kesslermatura.com

                                                   Sally J. Abrahamson
                                                   **WERMAN SALAS P.C.**
                                                   609 H Street NE, 4th Floor
                                                   Washington, D.C. 20002

Phone No.: (202) 830-2016
Fax No.: (312) 419-1025
sabrahamson@flsalaw.com

***Attorneys for Plaintiffs and the Putative
Collective and Class***

# **<u>Exhibit A</u>**

## CONSENT TO BECOME A PARTY-PLAINTIFF

1. I consent to be a party plaintiff in a lawsuit against my former employer, which operated the Checkers restaurant at which I was employed, and any related entities and individuals, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and any applicable state law.

2. During the past three years, there were occasions when my wages were delayed and I was not paid all wages, including minimum or overtime wages, in accordance with the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

3. I designate Werman Salas P.C. and Kessler Matura P.C. to represent me and make decisions on my behalf concerning the litigation, including any settlement.  I agree to be bound by any adjudication, whether it is favorable or unfavorable.

4. I also consent to join any separate or subsequent action to assert my claims against my employer and any other related entities or individuals potentially liable

Date: _04 / 06 / 2025_____

_____
Signature

Inezlee Feliciano

_____
Print Name